IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

Civil No. 8:18CV 427

vs.

**COMPLAINT FOR FORFEITURE *IN REM***

$42,533.00 IN UNITED STATES
CURRENCY,

Defendant.

COMES NOW the Plaintiff, United States of America, and for its cause of action against

the Defendant, states and alleges as follows:

### Nature of the Action

1.      This is an action to forfeit property to the United States for violations of 21 U.S.C.

§ 881.

### The Defendant *In Rem*

2.      The Defendant property consists of $42,533.00 in United States currency seized from

Mason Shaw Honeyman on April 5, 2018, during a traffic stop on westbound Interstate 80 near

mile marker 275 in Buffalo County, Nebraska.  Mason Shaw Honeyman was the registered owner

and driver of the vehicle; Alfredo Ramirez was the passenger.  Defendant property is presently in

the custody of the U.S. Marshals Service at Omaha, Nebraska.

## Jurisdiction and Venue

3.     This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881.

4.     This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

6.     The Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

7.     On April 5, 2018, at approximately 2340 hours, Nebraska State Patrol Trooper, Nathan Avery was operating a marked patrol unit. Sgt. J.J. Pedersen was riding with Trp. Avery. Trp. Avery was patrolling westbound Interstate 80 near mile 275 when a black Chevrolet car caught up to and passed the patrol car. The black car had Nebraska "metro" plates. Based on the time of night and direction of travel, Trp. Avery used a law enforcement

2

database to check the license plate. The database showed the registered owner to have a suspended license. Trp. Avery pulled next to the driver's side. Neither Trp. Avery nor Sgt. Pedersen could see into the black car due to the darkly tinted windows. Trp. Avery pulled behind the car, activated the emergency red and blue lights and stopped the vehicle. Trp. Avery approached the passenger side.

8.    Upon contact, Trp. Avery identified the driver as the registered owner, Mason Honeyman. He observed the front seat passenger to be leaned back in the seat and detected the odor of marijuana. Trp. Avery advised the reason for the stop and requested license, registration and insurance. The driver provided a Nebraska ID card and was identified as Mason Honeyman. The passenger provided a Nebraska license and was identified as Alfredo Ramirez. Trp. Avery retrieved a tint meter and checked the front and rear windows. Both front and rear windows measured 18%. Trp. Avery and Honeyman sat in the patrol car and talked. Honeyman stated he was going to Boulder, Colorado to look at a 1998 Camaro for $8000. Honeyman advised he only knew the passenger by his nickname "Junior". "Junior" worked as a mechanic and electrician and knew him through Honeyman Rentall. "Junior" came along to check over the car.

9.    Honeyman said he had messaged the seller earlier in the day, they would be staying at a hotel, and would stay there until noon. He said he hadn't talked to the owner on the phone just on Facebook. Honeyman had said he did talk to the seller earlier in the day. They were to meet in the afternoon. Honeyman and Junior didn't have reservations for a hotel but were going to share a room.

3

10.     Trp. Avery conducted a pat down of Honeyman and located a bundle of U.S. currency in Honeyman's pants pocket. Trp.Avery advised Honeyman, that he smelled marijuana in the vehicle and that a search would be conducted. Honeyman was placed into the back of the patrol car.

11.     Ramirez was advised a search would be conducted. Trp. Avery inquired about the marijuana and Ramirez stated he had smoked it all. Ramirez stated they were going to Denver, that Honeyman was buying a car in the morning. Ramirez was placed in the front of Trp. Avery's patrol car. Trp. Avery and Sgt. Pedersen searched the vehicle. Trp. Avery located a Ziploc bag of US currency, rolling papers and a plastic marijuana dispensary container in the center console and a marijuana blunt on the center console. Sgt. Pedersen located three large stacks of US currency inside a leg of a pair of pants in a duffle bag on the back seat. Each of the three rubber banded stacks of bills was comprised of ten individually rubber-banded bundles.

12.     Ramirez advised he didn't have any bags or clothes. Ramirez stated he brought a pillow and a phone. Trp. Avery noted that the clothes in the bag were the same size as the clothes Ramirez was wearing, the same brand of drawers and the same style of pants. Sgt. Pedersen explained the discrepancies in their stories and asked Ramirez if he saw the problem there and Ramirez stated "yea." Ramirez again stated that Honeyman was going to buy a car. When questioned about the clothes, Ramirez started to hyperventilate. When asked, Ramirez again stated he didn't have any clothes in the vehicle.

13.     Trp. Avery spoke with Honeyman who advised the duffle bag was his but that he had Junior throw his clothes in a bag and then said he put Junior's clothes in the bag.

4

14.     Trp. Avery advised Ramirez he was under arrest for possession of drug money. Ramirez stated the money was not his and that he also goes by the name Junior.

15.     Trp. Avery advised Honeyman he was under arrest for driving under suspension and for possession of drug money.  Trp. Avery Mirandized both men.  The vehicle was impounded due to the driving under suspension violation.

16.     At the Nebraska State Patrol Office in Kearney, Nebraska Trp. Avery interviewed Honeyman.  Honeyman continued to change his story whether he had contacted anyone with a car for sale in Colorado or not and how many cars he was looking at.  Honeyman now stated they would ship the cars back.  Honeyman was deceptive about his past criminal history and drug possession.  Honeyman advised he had withdrew some of the currency from his bank account recently but could not be more specific than within the last month but more than a couple days ago.  The rest of the currency, Honeyman advised he had kept at his shop at Honeyman Rentall.  Honeyman advised the clothes bag was his bag, that he put his money in the bag and then Ramirez's clothes were placed in the bag.  Honeyman claimed ownership of all the US currency in the vehicle.

17.     Trp. Avery interviewed Ramirez.  Ramirez stated he did not know Mason's last name, they had been riding bikes together for a while.

18.     A review of the interior video of the in-car camera showed Honeyman and Ramirez rehearsing their story.  Ramirez was seated in front and was visibly nervous.  Ramirez told Honeyman to say he got the money from the bank.  After Honeyman and Ramirez were placed under arrest Ramirez asked Honeyman how much he had and Honeyman said 32 or 42. Ramirez said no, I had 30 and you had 12.  Honeyman asked how the money was sorted because

5

he did not know. Ramirez said 30,000 in bands of 10. Ramirez said we're fucked. Ramirez said

they should have put all the money together. Ramirez told Honeyman he can't change his story.

Honeyman told Ramirez he said Ramirez was an electrician and a mechanic. Ramirez made

statements about the 1's and 5's in the bundles. Honeyman asked Ramirez if he had rolled the

cash in bundles.

19.     The total amount of money discovered at the traffic stop was $42,533.

<h3 align="center">Claim for Relief</h3>

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be

proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court;

that due notice be given to all interested parties to appear and show cause why forfeiture should

not be decreed; that the Defendant property be condemned, as forfeited, to the United States of

America and disposed of according to law and regulations; that the costs of this action be assessed

against the Defendant property; and for such other and further relief as this Court may deem just

and equitable.

UNITED STATES OF AMERICA,
Plaintiff

JOSEPH P. KELLY
United States Attorney

By:     s/ Douglas R. Semisch
        DOUGLAS R. SEMISCH, #16655
        Assistant U.S. Attorney
        1620 Dodge Street, Suite 1400
        Omaha, NE 68102-1506
        Tel: (402) 661-3700
        Fax: (402) 661-3081

6

E-mail:  doug.semisch@usdoj.gov

**VERIFICATION**

STATE OF NEBRASKA )
) ss.
COUNTY OF DOUGLAS )

Pursuant to Rule C(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Assistant United States Attorney for the District of Nebraska, Douglas R. Semisch, being first duly sworn, deposes and states the facts set forth herein are true and correct according to the best of his knowledge and belief.

DOUGLAS R. SEMISCH
Assistant U.S. Attorney

Subscribed and sworn to before me this ___ day of September, 2018.

GENERAL NOTARY - State of Nebraska
CHRISTY K FLOTT
My Comm. Exp. Dec. 29, 2021

Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and be calendared accordingly.

DOUGLAS R. SEMISCH
Assistant U.S. Attorney

7